## OWENS *v.* MISSOURI PAC. RY. CO.

*(Circuit Court, E. D. Texas.* March Term, 1889.)

RAILROAD COMPANIES—ACCIDENT TO PERSON ON TRACK—EVIDENCE—VIEW BY JURY.

> Plaintiff was run over or against by defendant's locomotive hauling a freight train, and had his arm at elbow broken and fractured. Plaintiff says he was endeavoring to step off the track bed when he was struck by the engine. Defendant contends that he was drunk, lying with his head on the rail, and his arm near or on the rail, and his limbs extending outwardly from the road-bed. The judge allowed, against defendant's objection, the jury to go from the court-room to make an examination of a railway engine. *Held,* there was no error to vitiate a verdict for plaintiff. On the evidence the findings of the jury seem to be correct.

*(Syllabus by the Court.)*

At Law. On motion for new trial.

Action by Patrick Owens against the Missouri Pacific Railway Company.

*Brady & Ring,* for plaintiff.

*Willie, Mott & Ballenger,* for defendant.

BOARMAN, J. The plaintiff sues for damages because of personal injury inflicted on him on being run over or against by defendant's locomotive hauling a freight train. The jury allowed him $4,500. The matter is now on a motion for a new trial. The evidence not disputed shows that Owens, at the time he was injured, worked in car-shops at Houston, and earned from $55 to $75 per month wages; that he is about 33 years of age; that his right arm and hand are permanently injured and almost useless to him for any work, skillful or otherwise; that he now earns or can earn much less than formerly; that he lived in the suburbs of Houston, on Car street; that defendant's railway track runs along this street, north and south; that the street has no sidewalk or improvements for the use of footmen or vehicles; that the railway track, being raised above the street level, is used, without objection, commonly by people living in said street as a footway; that Owens, having been "down town" in Houston until 2 or 3 o'clock, A. M., rode with a companion in a hack homeward to a point at or near the place on defendant's railway track about ———— yards south of the point where it is crossed by the New Orleans Railway track; that, reaching said point, Owens got out of the hack, and walked on northward up defendant's track; that when he had gone about 250 or 300 yards up the track he was run over or against by the defendant's locomotive hauling a freight train, and injured as aforesaid; that a little while before he was struck he heard a train whistle at the said railway crossing, which he took to be a whistle on a train running on the New Orleans Railway. The disputed matters relate to the speed the train was running when Owens was struck; to the distance the train had run after crossing the New Orleans Railway track; to whether or not the engine bell was ringing as the train was running on Car street, as the company's rules and the city ordinance require to be

done; and upon the very important question as to whether Owens was in fact walking along the railway track, or lying down with his head and arm on or near to the rail, with his limbs extending outwardly from the rail. On this last point, defendant's witnesses, the engineer and fireman, then on the locomotive, say that when they saw Owens first he was lying down in the way just mentioned; that they saw him for the first time when the engine was 20 or 30 feet from him, and they could do nothing to save him. The fireman, sitting on the left-hand side of the cab, said he thought the object which proved to be Owens was a pile of coal ashes lying on or near the track. They both say the engine bell was ringing, as the rules and ordinances require; that the train was running about four or five miles an hour; that the train, before going over the New Orleans Railway crossing, had come to a full stop; that Owens was hurt about —————— yards from said crossing; that Owens was knocked off by the cow-catcher pushing his head off the rail; and that they talked with him and heard him complain only of his head being hurt; that he said nothing about his arm being injured. Owens says he was walking homeward along the track; that he heard a locomotive whistling at the New Orleans Railway crossing, and he thought the whistling engine was on that track; that defendant's engine bell was not ringing, and no whistle was blown after the engine passed over the New Orleans Railway crossing; that when he first heard the noise of defendant's train, running rapidly behind him, it was close up to him, and in his effort to get away turned as quickly as he could, and in trying to step off the track was struck by the engine, or some part of it, and thrown off the track to the ground below the surface of the track-bed.

In the nature of things, there were or could be but three witnesses who can give positive evidence on this disputed point. The weight of the direct evidence seems to be with the defendants, and would be conclusive against plaintiff, but for the several witnesses for plaintiff, who relate a number of circumstances which corroberate Owens' evidence. Their testimony supports Owens' theory as to the train running 10 or 12 miles an hour. They say they heard no bell ringing on the engine at the time of the accident. The engineer and fireman, testifying for defendant, said the train always went slowly on that street; that they always rang the bell and blew the whistle when running along said street. On this point several witnesses living on the street said the trains often went rapidly by, and failed to ring the bell while running on Car street. In calling the attention of the jury to the issue of fact as to whether Owens was walking or lying down when he was hurt, I said to them that the question as to whether Owens was lying on the track, or was walking on it, would or could be, in some degree affected by the opinion they might reach as to whether or not he was drunk at the time he was injured; that if he was shown to be drunk, as was contended for by defendant's counsel, they would more readily believe the evidence of the engineer and firemen,—one or both of whom said his breath smelt of liquor,—who testified that Owens was lying down when he was run over; that, on the other hand, if the evidence, taken all together, showed that

he was sober, the evidence of himself, to the effect that he was not lying down, but was walking homeward, would be entitled to greater weight; and the important issue of fact as to whether he was walking or lying down must be determined one way or the other by a preponderance of all the evidence illustrating it. The matter as to whether Owens was lying down or walking along the track was strongly urged by the counsel arguing the case on either side. The plaintiff's counsel conceded in his argument that he had no case if Owens was shown to be drunk. The defendant's counsel contended that the facts and circumstances showed that Owens was drunk. A number of plaintiff's witnesses, among whom was the hack driver, the doctor who was at once called to see Owens, and the occupants of the house in which Owens lived, said in positive testimony that Owens was sober. The defendant had no contradictory evidence as to Owens being drunk of a positive kind, but relied on circumstances and on the statements of the engineer or conductor, who said his breath smelt of liquor. Whatever may be the truth as to his being drunk or sober, the evidence, judicially considered, is certainly stronger in favor of Owens' own testimony, that he had not been drinking, and was not at all drunk at the time the injury was inflicted on him. A number of witnesses testified that Owens was habitually a sober man, and the doctor who saw him a few minutes after the injury occurred said he was not at all intoxicated; that he smelt no liquor on his breath. The jury evidently did not believe Owens was drunk, and agreed in believing plaintiff's theory of the case on all the material issues. It appears, too, that they thought he, while walking along the railway track, was not given the benefit of such alarms or warnings from the train as he was entitled to by the rules of the company and by the city ordinances. It was not denied by defendant that the railway track was used by footmen at any time without objection.

This is the second time the jury have found for plaintiff, and I now fully concur with the jury in their findings, except as to the amount allowed.

The defendant, in urging his motion for a new trial, contends that the judge erred in allowing the jury to go from the court-room to examine a railway engine. Defendant objected at the time, and took a bill to the ruling of the court. I do not think, after examining authorities, the point is well taken. I do not know how much, if anything, the jury did learn or could have learned by this examination of a locomotive; but in reaching a verdict they had to decide for themselves whether Owens was struck by the engine, and how it came in contact with his body or limbs, and whether he was walking or lying down when he was struck. In their effort to decide these important matters, no harm could have been done either side by allowing them to examine the construction of an engine similar to the one that ran over or against the plaintiff.

I think plaintiff is not entitled to more than $2,250, and suggest a *remittitur* to that sum.

Motion for new trial overruled.